UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

WILLIAM POUND,

     Plaintiff,

  v.

BENTON COUNTY HEALTH
DEPARTMENT,

     Defendant.

_____

Case No. 6:23-cv-01670-MTK

**OPINION AND ORDER**

**KASUBHAI,** United States District Judge:

     Plaintiff William Pound ("Plaintiff") brings this religious discrimination claim against his former employer, Defendant Benton County Health Department ("Defendant"). Plaintiff alleges Defendant violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e (Second Claim for Relief) and Or. Rev. Stat. § ("ORS") 659A.030 (First Claim for Relief) by discriminating against him and failing to reasonably accommodate his religious beliefs when he objected to taking the COVID-19 vaccine. Defendant moves for summary judgment (ECF No. 15) on Plaintiff's claims. Defendant's motion is granted.

## BACKGROUND

     In August of 2020, Plaintiff began working for Defendant as a Skills Trainer and Qualified Mental Health Associate. Compl. ¶ 5, ECF No. 1. This position required Plaintiff to "[p]rovide case management and skills training to clients diagnosed with serious and persistent mental illness." Reese Decl. Ex. 1 ("Position Description"), at 1, ECF No. 16. Plaintiff's duties

as a skills trainer required him to conduct in-person assessments with children in a school setting. Reese Decl. Ex. 2 ("Exemption Request Form"), at 1.

In August of 2021, the Oregon Health Authority ("OHA") implemented an administrative rule that required all healthcare providers and staff to be vaccinated against COVID-19 by October 18, 2021 or apply for a medical or religious exemption. Or. Admin. R. 333-019-1010. That rule also required employers of healthcare providers to take "reasonable steps" to ensure that exempt employees were protected from contracting and spreading COVID-19. Or. Admin. R. 333-019-1010(4).

On September 20, 2021, Defendant emailed its employees to inform them about the vaccine requirement and the option to seek religious "exception and accommodation." Reese Decl. Ex. 3 ("September 20, 2021 Email"). Plaintiff's religious beliefs prevented him from receiving the COVID-19 vaccine. Compl. ¶ 11. Accordingly, on September 21, 2021, Plaintiff submitted a request for religious exemption, which Defendant denied after meeting with Plaintiff to discuss. Reese Decl. Ex. 6; Exemption Request Form. Defendant laid off Plaintiff on October 14, 2021, and placed him on a six-month recall list. Compl. ¶ 12. On February 11, 2022, Defendant offered Plaintiff employment that required him to be fully vaccinated. *Id.* Plaintiff requested a medical exemption, citing his natural immunity. *Id.* Defendant denied that request and removed Plaintiff from the recall list. *Id.*

## STANDARDS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is

such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## DISCUSSION

Plaintiff alleges that Defendant violated Title VII and Oregon law by discriminating against him based on his religion and failing to accommodate his need for religious exemption. Compl. ¶¶ 17–27. As discussed below, Plaintiff's disparate treatment claim fails because he has not shown that similarly situated employees were treated more favorably, and Plaintiff's failure to accommodate claim fails because Defendant has shown that accommodating Plaintiff's religious belief would result in undue hardship.

## I.     Defendant's Motion for Summary Judgment

Defendant moves for summary judgment, arguing that (1) Plaintiff's Title VII claim is time-barred, (2) Plaintiff cannot establish a prima facie case of discrimination, and (3) accommodating Plaintiff's religious objection would have caused undue hardship. Because the Court resolves Plaintiff's claim on the merits, it need not reach Defendant's first argument.

### A.    Disparate Treatment

Plaintiff must establish a prima facie case for disparate treatment by showing that "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Berry v. Dep't Soc. Servs.*, 447 F.3d 642, 656 (9th Cir. 2006) (internal quotation marks and citation omitted).[1] If Plaintiff carries that burden, the burden shifts to Defendant to "offer a legitimate nondiscriminatory reason" for the adverse action, at which point Plaintiff must prove that Defendant's stated reason is pretext. *Id.*

Defendant does not dispute the first three elements of Plaintiff's prima facie case. As to the fourth element, Defendant argues that Plaintiff cannot show that any similarly situated individuals outside of the protected class were treated more favorably. Plaintiff offers no evidence that unvaccinated employees who were not part of Plaintiff's protected class received more favorable accommodations or treatment. Neither does he offer any evidence of circumstances that "give rise to an inference of discrimination." *Berry*, 447 F.3d at 656. Accordingly, Plaintiff has failed to establish a prima facie case for disparate treatment, and Defendant's motion is granted as to that claim.

### B.    Failure to Accommodate

In addition to disparate treatment, Plaintiff also alleges that Defendant failed to accommodate his religious beliefs. Defendant argues that the Court can resolve all of Plaintiff's claims because of his failure to state a prima facie case, but Defendant overlooks that there is a

---

[1] Courts construe Oregon's statutory counterpart, Or. Rev. Stat. § 659.030, as identical to Title VII. *Heller v. EBB Auto Co.*, 8 F.3d 1433, n.2 1437 (9th Cir. 1993). The Court analyzes the state and federal claims under the same legal standards.

different prima facie case for failure to accommodate claims. *See, e.g.*, *Berry*, 447 F.3d at 655–56. As discussed below, Plaintiff has indisputably stated a prima facie case for failure to accommodate, placing Defendant's undue hardship defense squarely at issue.

           1.    <u>Prima Facie Case</u>

For his failure to accommodate claim, Plaintiff must show "that (1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected him to an adverse employment action because of his inability to fulfill the job requirement." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004). If established, the burden then shifts to Defendant to show that it "initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Id.*

Defendant does not dispute that Plaintiff's religious belief conflicted with his employment duty to get vaccinated so that he could continue working in person, nor does it dispute that Defendant terminated Plaintiff because of his inability to fulfill that duty. Plaintiff has met his burden to establish a prima facie case under this theory, and the burden shifts to Defendant to establish that it made efforts to reasonably accommodate Plaintiff's religion or that it could not do so without undue hardship.

           2.    <u>Undue Hardship</u>

An "'undue hardship' is shown when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). Whether a burden is substantial is a fact-specific inquiry that should be resolved in a "common-sense manner." *Id.* at 471. Under the *Groff* standard, "courts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical

impact in light of the nature, size, and operating cost of an employer." *Id.* (internal quotation marks, citation, and alterations omitted).

The Ninth Circuit recently applied *Groff* in a case similar to this one. In *Petersen v. Snohomish Regional Fire and Rescue*, --- F.4th ----, 2025 WL 2503128 (9th Cir. 2025), the defendant fire department's health and safety costs, operational burdens, and financial burdens rose to the level of undue hardship after 46 firefighters requested exemptions to a COVID vaccine requirement.

Pre-*Groff* guidance from the U.S. Equal Employment Opportunity Commission ("EEOC") on the undue hardship standard also remains instructive. *Groff*, 600 U.S. at 471 (rejecting full adoption of EEOC's pre-*Groff* interpretation of undue hardship but explaining a "good deal of the EEOC's guidance in this area is sensible and will, in all likelihood, be unaffected by" the Court's clarifying decision). Specific to evaluating undue hardship in the context of COVID-19 vaccinations, the EEOC provides sensible and relevant guidance consistent with *Groff*:

> Considerations relevant to undue hardship can include, among other things, the proportion of employees in the workplace who already are partially or fully vaccinated against COVID-19 and the extent of employee contact with non-employees, whose vaccination status could be unknown or who may be ineligible for the vaccine. (§ K.12, Updated May 28, 2021).
> Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business—including, in this instance, the risk of the spread of COVID-19 to other employees or to the public.... An employer cannot rely on speculative or hypothetical hardship when faced with an employee's religious objection but, rather, should rely on objective information. Certain common and relevant considerations during the COVID-19 pandemic include, for example, whether the employee requesting a religious accommodation to a COVID-19 vaccination requirement works outdoors or indoors, works in a solitary or group work setting, or has close contact with other employees or members of the public (especially medically vulnerable individuals). Another relevant consideration is the number of employees who are seeking a similar accommodation, i.e., the cumulative cost or burden on the employer. (§ L.3, Updated March 1, 2022).

*What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws,* EEOC ("EEOC COVID Guidance") (last visited September 18, 2025), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-adarehabilitation-act-and-other-eeo-laws [https://perma.cc/DP3Q-MWTP].

Consistent with this contextualized and common-sense approach, when conducting an undue hardship analysis, the Court finds it appropriate to consider the following factors: (1) the information available at the time Defendant made its accommodation decision; (2) economic and non-economic costs of the accommodation; and (3) the cumulative or aggregate effects of an accommodation requested by multiple, similarly situated employees.[2]

Defendant argues that accommodating Plaintiff would result in undue hardship. First, as to the information available to Defendant at the time it determined that it could not accommodate Plaintiff's request, Defendant submits evidence that Benton County had experienced 28 COVID-related deaths as of September 21, 2021, and that the County "experienced the highest number of deaths since the onset of the pandemic" in that month. Reese Decl. Ex. 4, at 1. Defendant decided to allow only vaccinated employees to provide in-person care based in part on the surge of cases and hospitalizations at that time. Martineau Decl. Ex. 3, ECF No. 26. Defendant also offers evidence that the Health Department Director, Suzanne Hoffman, MPH, considered masking and distancing to be insufficient accommodations in October of 2021, because the OHA changed its guidelines from mandating masks and distance to mandating vaccination. Martineau Decl. Ex. 1, at 1; Martineau Decl. Ex. 3.

Second, as to the economic and non-economic costs of accommodation, Defendant contends that allowing Plaintiff to work in his role would pose health and safety risks to

---

[2] For a thorough and well-reasoned explanation of these three factors and their relation to *Groff*, *see Lavelle-Hayden v. Legacy Health*, No. 3:22-CV-01752-IM, 2024 WL 3822712, at *8–10 (D. Or. Aug. 14, 2024).

Plaintiff's clients and co-workers. The Ninth Circuit recognized in *Petersen* that health and safety costs of COVID-19 exposure are valid considerations in an undue hardship analysis. 2025 WL 2503128, at *9. Here, Plaintiff was "a skills trainer that work[ed] directly with clients and [could] [not] work from home." Reese Decl. Ex. 2, at 1. Defendant argues, and Plaintiff does not dispute, that "[t]he individuals that the Plaintiff would have come in contact with include those which are most medically vulnerable—individuals with mental health disorders and children." Def.'s Mot. 16. Defendant determined that Plaintiff would not "be able to work remotely for any length of time, because [his] position require[d] in person assessments with the children [in] a school setting[.]" Reese Decl. Ex. 2, at 1. Further, Plaintiff was "the only school based clinician and [did] not have a back up to help with the in person requirements," which would have strained Defendant's operations. *Id.* Defendant contends that medical and scientific data support its conclusion "that allowing unvaccinated healthcare workers to continue working in person would . . . increase the likelihood of spreading COVID-19, threatening the safety of the workplace, and caus[ing] a direct cost to human life and well-being." Def.'s Mot. 17. Plaintiff does not meaningfully dispute these arguments or offer any evidence to counter them.

Finally, as to the third factor, the cumulative effects of accommodating other similarly situated employees, Defendant argues that it might have had to allow hundreds of unvaccinated health care workers to continue to work in person. According to Defendant, this would have increased the risk of exposure to COVID-19 and caused significant administrative burdens.

Defendant's arguments are bolstered by the EEOC's guidance and the Ninth Circuit's holding in *Petersen*. The EEOC COVID Guidance states that whether an employee has contact with non-employees, works indoors or outdoors, works in a solitary or group setting, or has close contact with others are relevant considerations to a finding of undue hardship in the context of

COVID-19 accommodations. That guidance also states that the number of employees seeking a similar accommodation is relevant.

Here, each of those factors suggests that Defendant would have suffered undue hardship: Plaintiff worked indoors, had close contact with non-employees, and Defendant represents that hundreds of others would have required similar accommodations to Plaintiff. This was the case in *Petersen*, too. *See* 2025 WL 2503128, at *7 (noting that the EEOC factors "weigh[ed] in favor of finding undue hardship . . . firefighters work in group settings, interfacing constantly with coworkers and the public, both inside and outdoors"). Additionally, as in *Petersen*, where COVID cases were on the rise and defendants believed that testing, masking, and social distancing were inadequate alternatives to vaccination, here, Defendant appropriately considered those factors. *Id. Petersen* also described that an increased risk of employee absences and scheduling issues arising out of those absences can support a finding of undue hardship. As mentioned, Plaintiff was the only staff member available for in-person services at his school, thus making this another valid consideration in Defendant's decision.

In sum, Defendant's evidence is sufficient to establish that its operations would have suffered an undue hardship if it allowed Plaintiff to continue working. The increased health and safety risks posed by unvaccinated employees working in person, the operational challenges created by a need to find another employee to fulfill Plaintiff's duties, and the administrative burdens caused by hundreds of other accommodations would have imposed a substantial burden on Defendant. Plaintiff offers no evidence and very little argument to rebut Defendant's position or meet its burden to overcome summary judgment. Defendant's motion is granted as to Plaintiff's failure to accommodate claim.

## CONCLUSION

For the reasons above, Defendant's Motion for Summary Judgment (ECF No. 15) is

GRANTED.

DATED this <u>19th</u> day of September 2025.

<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI (He / Him)
United States District Judge
